IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MINDY ENGEN**                                                                                          **PLAINTIFF**

v.                            CASE NO. 5:24-CV-_____

**BOARD OF TRUSTEES OF THE**
**UNIVERSITY OF ARKANSAS**                                                              **DEFENDANT**

**ORIGINAL COMPLAINT**

COMES NOW Mindy Engen, by and through her attorney Chris Burks of WH LAW, for her Original Complaint against the Board of Trustees of the University of Arkansas, she does hereby state and allege as follows:

**I. PRELIMINARY STATEMENTS**

1. Plaintiff brings this action against the Defendant for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's retaliatory actions toward Plaintiff, resulting in her removal from a Department Chair position, which was effectively a demotion and qualifies as an adverse action.

2. Upon information and belief, Defendant has willfully and intentionally committed violations of Title VII and ACRA, as described, *infra*.

**II. JURISDICTION AND VENUE**

3. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under Title VII.

4. The acts complained of herein were committed and had their principal effect within the Fayetteville Division of the Western District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

5. Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

6. The witnesses to the Title VII violations alleged in this Complaint reside in this District.

### III.   THE PARTIES

7. Plaintiff Mindy Engen has been employed by the Defendant for nineteen years.

8. She was a Professor and Chair of the Department of Sociology and Criminology until she was terminated from the Department Chair position on February 7, 2024.

9. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under Title VII and ACRA.

10. Defendant University of Arkansas is an "employer" within the meanings set forth in Title VII and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

### IV.   FACTUAL ALLEGATIONS

11. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

12. Plaintiff has been employed by Defendant for nineteen (19) years.

13. At the time the events described herein occurred, Plaintiff was a Professor and Department Chair in the Department of Sociology and Criminology ("Department").

14. As part of her job duties as Department Chair, in January 2024, Plaintiff was serving as the chair of a search committee for a new faculty member for the Department (hereinafter the "Sociology position").

15. The Defendant has specific policies for its recruitment and hiring process, which were created to ensure all departments and divisions within the University of Arkansas comply with state and federal guidelines regarding equal employment opportunities for candidates who may have protected characteristics, like women, racial minorities, protected veterans, and persons with disabilities. At the university level, these policies are enforced by the Defendant's Equal Opportunity, Compliance, and Title IX staff ("OEOC").[1]

16. The position announcement for the Sociology position was defined and developed by the search committee.

17. Prior to any public advertisement for this position, the position announcement was approved by Dean Kathryn Sloan, the interim dean of the Fulbright College of Arts and Sciences.

18. After the position announcement was posted, the search committee selected candidates to interview based on the requirements in the position announcement and the application materials submitted by candidates.

19. On January 25, 2024, there was a full department meeting to review the shortlist for the Sociology position. The Department approved the shortlist created by the search committee.

20. After the shortlist was approved, the Department had to review the Candidate Assessment Document to select the candidates from the shortlist who will be interviewed for the position. The Defendant's recruitment policy requires each applicant assessment contain clear and

---

[1] Defendant's recruitment manual is available via this link: https://oeoc.uark.edu/recruitment-information/recruitment-manual/RecruitmentManual02152022.pdf.

logical reasons for or against interviewing each applicant. The ballots for this process were circulated after the January 25 department meeting.

21.     That afternoon, Dean Sloan attempted to schedule a meeting with Plaintiff, who was already booked to attend another meeting. Dean Sloan scheduled a meeting with Plaintiff for 9:30am on January 26.

22.     In the meeting on January 26, 2024, Dean Sloan told Plaintiff she did not approve of the candidates on the shortlist. Dean Sloan was angry that the search committee had selected candidates with PhDs in criminology-related areas, instead of candidates with sociology backgrounds not based in criminology.

23.     Dean Sloan acknowledged that criminology is a field within sociology, and that all the candidates, even the ones with criminology backgrounds, were sociologists. Further, she acknowledged that the Sociology position was an "open hire" that did not require candidates to have specific research areas or specializations.

24.     The position announcement that Dean Sloan approved also states that candidates should have a "Sociology or related Social Science discipline" degree.

25.     All candidates on the short list met the requirements in the position announcement.

26.     Dean Sloan then told Plaintiff that she did not review the position announcement that she approved. As a result, Plaintiff had no way of knowing, until this point, that Dean Sloan wanted the search committee to seek candidates with non-criminology backgrounds.

27.     Dean Sloan demanded Plaintiff remove any candidate that did not have a PhD exclusively in sociology from the shortlist.

28. Plaintiff did not create the shortlist, and Plaintiff did not have any authority, under the Defendant's own recruitment policies, to remove candidates who met with the position announcement criteria and who had been selected by the search committee and approved by the Department. Because the candidate assessment documents for voting on shortlist candidates to interview had been circulated, only voting faculty and the search committee could decide who to strike from the list, and only if they could provide legitimate reasons for doing so.

29. Plaintiff explained these facts to Dean Sloan, who again demanded that Plaintiff remove the candidates that Dean Sloan did not want to hire. Plaintiff agreed to review the position announcement and the candidates again.

30. Over the next few days, Plaintiff and Dean Sloan met multiple times regarding the Sociology position. During these meetings, Dean Sloan became increasingly irate with Plaintiff, calling her an "incompetent" "liar" who "hides things" and can't "control the committee."

31. Plaintiff continued to refuse Dean Sloan's demands that she remove candidates that Dean Sloan "did not want" from the shortlist. Plaintiff told Dean Sloan that what she wanted Plaintiff to do was against the Defendant's OEOC policies and procedures regarding recruitment. Plaintiff expressed concern that one of the candidates Dean Sloan wanted her to remove was openly homosexual, and that it would appear discriminatory if they removed this candidate from the shortlist without a legitimate reason, as this was against OEOC regulations.

32. On January 29, 2024, Plaintiff met with Dean Sloan, Associate Dean Lia Uribe, and the search committee for the Sociology Position. Dean Sloan acknowledged again that she did not review the position announcement for the sociology position (even though she approved it). She described the directive she provided to Plaintiff, which the committee members affirmed was the

same directive they received from Plaintiff, which they reviewed prior to developing the position announcement for the Sociology position.

33. The search committee members expressed confusion with Dean Sloan's distinction between sociology and criminology, and the restrictions she wanted to place on the position after the position announcement was published and the shortlist was determined and approved by the department.

34. The next day, on January 30, 2024, Plaintiff reported Dean Sloan's harassment and interference with the search process to the Defendant's Equal Opportunity, Compliance, and Title IX Office (OEOC). A similar complaint had been made by another individual about Dean Sloan interfering in a separate search earlier in the 2023-2024 academic year.

35. The OEOC staff confirmed that Plaintiff is not allowed to add additional minimum requirements after the position announcement and rubric have been evaluated and the shortlist has been selected. The OEOC representative told Plaintiff she would follow up with Dean Sloan's office regarding what she had demanded Plaintiff do.

36. On January 31, 2024, Dean Sloan's office attempted to set up a meeting with Plaintiff, who was out of the office. She set up a meeting for the following Monday, February 5, 2024.

37. On February 2, 2024, Dean Sloan cancelled the Feb. 5 meeting. Plaintiff later learned that she had met with the Vice Chair of Plaintiff's department and another faculty member, and that during this meeting, she had denigrated Plaintiff and the search process for the Sociology position.

38. On February 1, 2024, Dean Sloan sent an email to Plaintiff, everyone in her office, and Human Resources, regarding supposed errors Plaintiff made during another search process that caused "reputational harm to the university." Plaintiff responded to the email and explained that no mistakes had been made.

39. On February 7, 2024, Dean Sloan fired Plaintiff from her Department Chair position. This removal was effective immediately and Plaintiff was required to vacate her office by the end of the week.

40. Because Plaintiff was not assigned to a new office, she was effectively removed from campus.

41. Two days after this meeting, Dean Sloan told the Department during a meeting that Plaintiff had refused to meet with her, that "this wasn't about the search" for the sociology position, and that she had to work with people she trusts.

42. Dean Sloan brought up other alleged errors that Plaintiff had made, such as allowing a faculty member to send his CV and materials to faculty during a tenure and promotion process, which Plaintiff did not do; initiating an offer on another position without dean or associate dean approval, which Plaintiff did not do; initiating a job offer to a candidate prior to receiving dean approval, which Plaintiff did not do; and refusing to attend a meetings that Plaintiff was either not notified of or that were held without prior warning after Plaintiff had already left work.

43. All of the reasons offered by Dean Sloan for Plaintiff's demotion were pretextual, demonstrably false, and intentionally misleading.

44. Plaintiff was demoted because she made complaints to Defendant's OEOC office about Dean Sloan pressuring her to violate the OEOC policies and procedures, which is unethical and a violation of Defendant's own policies regarding equal employment opportunities in hiring.

45. Plaintiff also complained about Dean Sloan pressuring her to remove a homosexual candidate from the shortlist for the Sociology position in violation of OEOC procedures, pointing out that this not only violated policies, it opened the Defendant up to claims of discrimination because the candidate would have been removed without legitimate reason.

46. After Plaintiff made a protected complaint to the Defendant OEOC about Dean Sloan violating policies regarding equal employment opportunities and employing discriminatory hiring processes, Plaintiff was demoted from the Department Chair position.

47. As a result of this demotion, Plaintiff has suffered a change in title, a loss of salary, and a reduction in job duties and benefits.

48. Defendant removing Plaintiff as Department Chair qualifies as an adverse employment action.

49. As a result of the ongoing retaliation Plaintiff experienced as a result of her complaint to Defendant, Plaintiff was demoted on February 7, 2024.

## V.     FIRST CLAIM FOR RELIEF – Title VII Claims

50. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

51. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

52. Defendant engaged in unlawful employment practices at their facility in Fayetteville, in violation of 42 U.S. Code §2000e-2.

53. Specifically, and as detailed above, Plaintiff was demoted in retaliation after making a protected complaint about discriminatory hiring policies to the Defendant' OEOC staff.

54. At all relevant times, Plaintiff could perform the essential function of the Department Chair position.

55. However, Plaintiff was removed from this position within the relevant statutory period.

56. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of retaliation for a protected complaint.

57. The unlawful employment practices complained of above were and are intentional.

58. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

59. Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's violations of Title VII, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI. SECOND CLAIM FOR RELIEF – ACRA Claims

60. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

61. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted her administrative remedies.

62. Defendant engaged in unlawful employment practices at their facility in Fayetteville, in violation of 42 U.S. Code §2000e-2.

63. Specifically, and as detailed above, Plaintiff was demoted in retaliation after making a protected complaint about discriminatory hiring policies to the Defendant' OEOC staff.

64. At all relevant times, Plaintiff could perform the essential function of the Department Chair position.

65. However, Plaintiff was removed from this position within the relevant statutory period.

66. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of retaliation for a protected complaint.

67. The unlawful employment practices complained of above were and are intentional.

68. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

69. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and she seeks, an additional amount as compensatory and punitive damages equal to the sum of her lost wages or salary, benefits and/or other compensation denied or lost to her by reason of Defendant's

violations of ACRA, plus any interest she is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII.     PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Mindy Engen respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A)     A declaratory judgment that Defendant's practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B)     A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C)     Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(D)     Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(E)     An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F)     Such other and further relief as this Court may deem necessary, just and proper.

        Respectfully submitted,

        **Mindy Engen, PLAINTIFF**

        WH Law
        Fayetteville Office
        479.888.4357

By:    Chris Burks (ABN: 2010207)
        chris@wh.law

        Mailing Address:
        1 Riverfront Place, Suite 745
        North Little Rock, AR 72114