IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MINDY ENGEN                                                                                                PLAINTIFF

v.                                    Case No. 5:24-cv-05180

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS                                                                      DEFENDANT

## ORDER

Before the Court is a Motion to Dismiss filed by Defendant Board of Trustees of the University of Arkansas ("Defendant"). (ECF No. 7). Plaintiff Mindy Engen ("Plaintiff") has responded. (ECF No. 9). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is an employment lawsuit brought by Plaintiff after she was removed from her Chair position at the University of Arkansas, Fayetteville. Plaintiff alleges that she was demoted in retaliation after making a complaint about discriminatory hiring polices to Defendant's Equal Opportunity, Compliance, and Title IX Office ("OEOC"). Plaintiff alleges that this demotion occurred after Dean Kathryn Sloan ("Dean Sloan") ordered Plaintiff to remove candidates from a facility hiring shortlist in violation of Defendant's OEOC policies and procedures but Plaintiff refused. Plaintiff has brought claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq*. ("Title VII") and for violation of the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq*. ("ACRA").

The Court accepts all well-pleaded allegations in the Complaint (ECF No. 2) as true and construes them in favor of Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff was a Professor and the Chair for the Department of Sociology and Criminology at the

University of Arkansas, Fayetteville where she had been employed for nineteen (19) years. (ECF No. 2, at 2). In or around January 2024, Plaintiff was serving as the chair of a committee tasked with finding a new faculty member for her department. (ECF No. 2, at 3). Pursuant to this task, the committee developed and released a public advertisement for the position. (ECF No. 2, at 3). Prior to the public announcement of the position, Dean Sloan—the interim dean of the Fulbright College of Arts and Sciences—approved the announcement. (ECF No. 2, at 3). The committee then selected a shortlist of candidates to interview. (ECF No. 2, at 3).

On January 25, 2024, a full department meeting was held to review the shortlist created by the committee. (ECF No. 2, at 3). The shortlist was subsequently approved and then reviewed to create the Candidate Assessment Document in order to select the candidates that would be interviewed for the position. (ECF No. 2, at 3). University recruitment policy required that members provide clear and logical reasons for or against interviewing each candidate. (ECF No. 2, at 3-4). Ballots for this process were then circulated during the meeting. (ECF No. 2, at 4).

On January 26, 2024, Dean Sloan scheduled a meeting with Plaintiff. (ECF No. 2, at 4). During the meeting, Dean Sloan informed Plaintiff that she did not approve of the candidates on the shortlist. (ECF No. 2, at 4). Dean Sloan's issue was that the committee selected "candidates with PhDs in criminology-related areas, instead of candidates with sociology backgrounds not based in criminology." (ECF No. 2, at 4). Additionally, Dean Sloan acknowledged during the meeting that criminology was a field within sociology and that all shortlist candidates were sociologists. (ECF No. 2, at 4). Dean Sloan further acknowledged that the public announcement for the position did not require candidates to have specific research areas or specializations. (ECF No. 2, at 4). Dean Sloan informed Plaintiff that she had not reviewed the public

announcement before she approved it. (ECF No. 2, at 4). Dean Sloan then instructed Plaintiff to "remove any candidate that did not have a PhD exclusively in sociology from the shortlist." (ECF 2, at 4). Plaintiff informed Dean Sloan that she lacked the authority under the University of Arkansas's recruitment policies to remove candidates that had met the public announcement criteria and who had already been selected by the search committee and approved at the Department meeting. (ECF No. 2, at 5). Plaintiff then informed Dean Sloan that only voting faculty and the committee could strike candidates from the list, and even then, only if legitimate reasons could be given. (ECF No. 2, at 5).

In the days following January 26, 2024, Plaintiff met with Dean Sloan on several occasions to discuss the shortlist. (ECF No. 2, at 5). Plaintiff continued to reiterate that Dean Sloan's instructions went against the University of Arkansas's OEOC policies and procedures regarding faculty recruitment. (ECF No. 2, at 5). Plaintiff also raised concern that because one of the candidates was openly homosexual it would appear discriminatory if they removed the candidate from the shortlist without providing a legitimate reason. (ECF No. 2, at 5).

On January 29, 2024, Plaintiff met with Dean Sloan, Associate Dean Lia Uribe, and the committee. (ECF No. 2, at 5). At this meeting, Dean Sloan again acknowledged that she had not reviewed the public announcement before approving it. (ECF No. 2, at 5). Dean Sloan proceeded to describe the initial directive that she provided Plaintiff. (ECF No. 2, at 5). The committee stated that this was the same directive they received from Plaintiff and was the basis for the public announcement for the Department faculty position. (ECF No. 2, at 6). The committee expressed confusion with Dean Sloan's new choice of restrictions and that they were brought after the public announcement had been made and the shortlist approved at the full meeting. (ECF No. 2, at 6).

On January 30, 2024, Plaintiff reported Dean Sloan to the University of Arkansas's OEOC office for harassment and interference with the search process. (ECF No. 2, at 6). During this process, OEOC staff confirmed that Plaintiff was not allowed to change the minimum requirements after the public announcement, the rubric had been evaluated, and the short list had been selected. (ECF No. 2, at 6). OEOC staff then informed Plaintiff that they would follow up with Dean Sloan's office regarding the incident. (ECF No. 2, at 6).

On January 31, 2024, Dean Sloan's office attempted to schedule a meeting with Plaintiff, but Plaintiff was out of office. (ECF No. 2, at 6). Instead, a meeting was set for February 5, 2024. (ECF No. 2, at 6). On February 1, 2024, Dean Sloan sent out an email "to Plaintiff, everyone in her office, and Human Resources, regarding supposed errors Plaintiff made during another search process that caused 'reputational harm to the university." (ECF No. 2, at 7). Plaintiff responded to this email and argued that no mistakes had been made during the process. (ECF No. 2, at 7). On February 2, 2024, Dean Sloan cancelled her February 5, 2024, meeting with Plaintiff to instead meet with the Vice Chair of Plaintiff's department and another faculty member where Dean Sloan "denigrated" Plaintiff's performance and the candidate search process. (ECF No. 2, at 6).

Following this, on February 7, 2024, Dean Sloan demoted Plaintiff from her position as the Chair of her department. (ECF No. 2, at 7). Plaintiff's demotion was effective immediately and required Plaintiff to vacate her office by the end of the week, despite not being assigned a new office. (ECF No. 2, at 7). Additionally, during a meeting with the department, Dean Sloan alleged that Plaintiff, along with numerous other issues, had "refused to meet with her, that 'this

4

wasn't about the search' for the sociology position, and that she had to work with people she trusts."[1]  (ECF No. 2, at 7).

On August 8, 2024, Plaintiff filed the instant Complaint.  (ECF No. 2).  On September 6, 2024, Defendant filed the instant motion.  (ECF No. 7).  Defendant argues that: (1) Plaintiff has failed to state a plausible Title VII retaliation claim; (2) Plaintiff's ACRA claim should be dismissed because it is barred by sovereign immunity; and (3) Plaintiff's request for punitive damages should be barred because punitive damages may not be recovered under Title VII when the defendant is a government or governmental agency.  (ECF No. 7, at 2).

## II.  STANDARD OF REVIEW

A party may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint's factual allegations are assumed true and all reasonable inferences are drawn in Plaintiff's favor, "even if it strikes a savvy judge that actual proof of those facts is improbable."  *Twombly*, 550 U.S. at 555-56.  The Court, however, need not "blindly accept the legal conclusions drawn by the pleader from the facts."  *Westcott v. City of Omaha*, 901 F.2d 14486, 1488 (8th Cir. 1990).

The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

---

[1] The Court notes that it is unclear when precisely this meeting with the Department occurred.  Plaintiff states that it occurred "[t]wo days after this meeting."  (ECF No. 2, at 7).  If Plaintiff is referring to the February 2, 2024, meeting between Dean Sloan, the Vice Chair of Plaintiff's department, and the other faculty member it would place the date on February 4, 2024, and three days before she was demoted.  However, if Plaintiff is referring to the day she was demoted as "this meeting," it would change the date to February 9, 2024, and two days after she was demoted.

5

*Twombly*, 550 U.S.). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of 'further factual enhancement.'" *Id.* (cleaned up). In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.  DISCUSSION

The Court faces three issues in the instant motion: (1) whether Plaintiff has stated a plausible Title VII claim; (2) whether Plaintiff has stated a plausible ACRA claim; and (3) whether Plaintiff may recover punitive damages. The Court will review each in turn.

**A. Title VII Retaliation**

Title VII of the Civil Rights Act of 1964 "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). Under Title VII, it is unlawful for an employer to discriminate against an individual with respect to "compensation, terms, conditions, or privileges of employment" because of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Additionally, "Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). To that end, it is unlawful:

> for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or

6

>because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3 (2000). For a plaintiff to sufficiently plead a claim for retaliation pursuant to Title VII, she must plead that: "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) that a causal connection exists between the two." *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 702 (8th Cir. 2006); *see also Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). A plaintiff employee need not establish that the conduct she opposed was in fact prohibited under Title VII; rather she need only demonstrate that she had a "good faith, reasonable belief that the underlying challenged conduct violated [Title VII]." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000). "Under the 'simplified notice pleading standard' that governs *McDonnell Douglas* retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Rogers v. Nebraska Urb. Indian Health Coal., Inc.*, No. 8:22-CV-410, 2023 WL 2990720, at *6 (D. Neb. Apr. 18, 2023) (quoting *Willson*, 850 F.3d at 372). "Reporting suspected harassment and discrimination 'are the very essence of protected activity under Title VII.'" *Johnson v. Walmart, Inc.*, No. 2:23-CV-02059, 2024 WL 3970274, at *8 (W.D. Ark. Aug. 28, 2024) (citing *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)).

Defendant contends that Plaintiff's Title VII claim should be dismissed because Plaintiff has failed to state a plausible, non-conclusory claim that she opposed a discriminatory hiring practice. (ECF No. 8, at 5). Defendant notes that candidates who lacked a PhD exclusively in sociology are not a class protected by Title VII. (ECF No. 8, at 5). Defendant also argues that Plaintiff's concern that one of the candidates that would be removed was openly homosexual is not persuasive because Dean Sloan established that she was concerned about the presence of the

other candidates on the shortlist, not just the openly homosexual candidate. (ECF No. 8, at 5-6). Further, Defendant argues that Dean Sloan had asked Plaintiff to remove all the candidates in question before Plaintiff expressed any concern that one of the affected candidates was openly homosexual. (ECF No. 8, at 5-6). Defendant asserts that Plaintiff lacked a good-faith, reasonable belief that Dean Sloan had a discriminatory motive because Plaintiff herself only suggested to Dean Sloan that "doing so would have appeared discriminatory." (ECF No. 8, at 6). Defendant argues that Plaintiff fails to allege that she told the OEOC that removing the homosexual candidate would have been discriminatory and instead only told the OEOC that doing so would open Defendant to claims of discrimination. (ECF No. 8, at 7).

  Plaintiff emphasizes that her specific allegations must be taken as true. (ECF No. 9, at 5). Plaintiff notes that her Complaint alleges that she was demoted after making a protected report to the OEOC about Dean Sloan violating certain polices and that report led to her demotion. (ECF No. 9, at 5-6). Plaintiff argues that Defendant's current position that Dean Sloan was not discriminating against the homosexual candidate is immaterial because Plaintiff's complaint to the OEOC was a protected act. (ECF No. 9, at 6). Plaintiff also argues that even if the OEOC investigated Plaintiff's complaint and found it unsubstantiated, she would "still be protected from retaliation based on the fact that she made a complaint to them about discrimination in hiring." (ECF No. 9, at 6). Plaintiff asserts that she has specifically pled that she was demoted from her department chair position after making a protected complaint to OEOC staff about discriminatory hiring practices. (ECF No. 9, at 6). Plaintiff emphasizes that she was terminated a week after making her protected complaint about discriminatory hiring practices. (ECF No. 9, at 7). Plaintiff asserts that Title VII protects employees for the act of making reports so long as the employee can stablish the "but-for" causation. (ECF No. 9, at 7). Plaintiff argues that while Defendant may disagree with the substance of Plaintiff's OEOC report, it cannot argue that

8

Plaintiff made the report or that she asserts that she was demoted because of the report. (ECF No. 9, at 7).

"Protected conduct is the opposition to employment practices that a reasonable person could believe violate Title VII." *Walker v. Arkansas Dep't of Cmty. Correction*, No. 3:08CV00131 BSM, 2010 WL 3035518, at *1 (E.D. Ark. Aug. 2, 2010) (citing *Helton v. Southland Racing Corp.*, 600 F.3d 954, 960 (8th Cir. 2010)). Broadly, Plaintiff alleges that her OEOC report was about Dean Sloan's harassment and interference with the search process. However, Plaintiff also states that her OEOC report was about "Dean Sloan pressuring her to remove a homosexual candidate from the shortlist for the Sociology position in violation of OEOC procedures, pointing out that this not only violated policies, it opened [] Defendant up to claims of discrimination because the candidate would have been removed without legitimate reason." (ECF No. 2, at 8). It appears to the Court that Plaintiff was concerned about Dean Sloan's willingness to violate OEOC equal employment hiring practices and filed her OEOC report to prevent Dean Sloan from discriminating against a homosexual candidate. Though part of Plaintiff's concern was clearly the broader group of candidates, Plaintiff repeatedly expressed concern that Dean Sloan's decision would be a discriminatory hiring process. Construed most favorably to the non-moving part, and taking Plaintiff's well-pleaded allegations as true, the Court finds that Plaintiff has stated a plausible claim that her OEOC report was a protected activity under Title VII based on a good faith, reasonable belief.

When dealing with retaliation, an adverse employment action is one "that a reasonable employee would have found . . . materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Johnson*, 2024 WL 3970274, at *8 (citing *Tisdell v. McDonough*, No. 21-3658, 2023 WL 2486083, at *3 (8th Cir. Mar. 14, 2023)). The Court finds that it is plausible that Plaintiff suffered an adverse

employment action when she was demoted from her department chair position, resulting in a reduction to her salary, a change in title, a reduction in job duties and benefits, and was promptly removed from her office within a week of being demoted.

"[R]etaliation must be the 'but for' cause of the adverse employment action." *Johnson*, 2024 WL 3970274, at *8 (citation omitted); *see also Wilson*, 850 F.3d at 372. Typically, a plaintiff alleging retaliation must provide more than just a temporal connection between the protected activity and the adverse employment. *See Meinen v. Bi-State Dev. Agency*, No. 4:22-CV-00620-JAR, 2023 WL 156857, at *2 (E.D. Mo. Jan. 11, 2023), *aff'd*, 101 F.4th 947 (8th Cir. 2024). However, "[w]hen the temporal gap between the two events is particularly close, a court is more likely to find that it evidences causation." *Id.* (citing *O'Toole v. City of St. Louis*, No. 4:20-CV-01851-MTS, 2022 WL 782306, at *3 (E.D. Mo. Mar. 15, 2022)). Plaintiff filed her OEOC report on January 30, 2024, and then eight days later on February 7, 2024, Plaintiff was demoted from her position as the department chair. As the Court of Appeals for the Eighth Circuit quoted from the First Circuit, "[w]e do not rule out some pleadings may allege a temporal gap so attenuated as not to meet the plausibility standard for surviving motions to dismiss, but this case is a far cry from that." *Wilson*, 850 F.3d at 373 (quoting *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014)). Further, just two days after Plaintiff reported Dean Sloan to the OEOC and the OEOC stated that they would speak with Dean Sloan's office, Dean Sloan sent out a mass email speaking negatively of Plaintiff. Three days after the OEOC report, Dean Sloan cancelled her meeting with Plaintiff and instead met with the Vice Chair of Plaintiff's department and another faculty member to criticize Plaintiff's performance. Notably, there was no record of Dean Sloan publicly criticizing Plaintiff before the OEOC report. Between the eight-day time frame and Dean Sloan's comments, it appears to the

Court that Plaintiff's engagement in a protected activity was the but-for cause of the adverse action. Thus, the Court finds that Plaintiff has stated a plausible Title VII retaliation claim.

While the Court finds that Plaintiff has stated a plausible Title VII retaliation claim, the Court also notes that the burden on Plaintiff at the summary judgment stage will be higher. At that stage Plaintiff must produce evidence to create a genuine issue of material fact as to each element of this claim. *See Johnson*, 2024 WL 3970274, at *8; *see also Wilson*, 850 F.3d at 372-73.

### B. ACRA

Traditionally, ACRA claims are reviewed together with Title VII because they are analyzed using the same analytical framework. *See Crone v. United Parcel Serv., Inc.*, 301 F.3d 942, 945 (8th Cir. 2002). However, in the instant motion, Defendant argues that sovereign immunity bars Plaintiff's ACRA claim because Defendant is an arm of the State of Arkansas. (ECF No. 8, at 7). Defendant also argues that no exception applies that would allow for this suit to avoid sovereign immunity. (ECF No. 8, at 8). Plaintiff flatly acknowledges that the State of Arkansas's sovereign immunity bars her ACRA claim, and "consents to the non-suit of her ACRA counts." (ECF No. 9, at 7). Plaintiff only argues that sovereign immunity does not bar her Title VII claim. (ECF No. 9, at 7).

The Court agrees with the parties that Plaintiff's ACRA claim is barred by the sovereign immunity of the State of Arkansas. "Sovereign immunity is jurisdictional immunity from suit." *State v. Goss*, 344 Ark. 523, 526, 42 S.W.3d 440, 442 (2001). Sovereign immunity comes from the Arkansas Constitution, which provides, "[t]he State of Arkansas shall never be made a defendant in any of her courts." Ark. Const. art. 5, § 20. This provision has been consistently interpreted as a general prohibition against awards of money damages in lawsuits against the state. *Goss*, 344 Ark. at 526, 42 S.W.3d at 442. Claims for money damages against state

agencies and state employees in their official capacities are tantamount to claims against the state, and are likewise barred. *See Brown v. Ark. State Heating, Ventilation, Air Conditioning & Refrigeration (HVACR), Licensing Bd.*, 336 Ark. 34, 38, 984 S.W.2d 402, 403-04 (1999).

The doctrine of sovereign immunity is "rigid and may only be waived in limited circumstances." *Id.* There are only two ways in which sovereign immunity can be waived: (1) where the state is the moving party seeking specific relief, and (2) when an act of the legislature creates a specific waiver of immunity. *Id.*, S.W.3d at 443. The ACRA expressly reserved Arkansas' right to sovereign immunity from suit. Ark. Code Ann. § 16-123-104. ACRA claims against the State of Arkansas, state agencies, or state employees in their official capacities are barred by sovereign immunity. *See Brown*, 336 Ark. at 38, 984 S.W.2d 402, 403-04. Thus, the Court finds that Plaintiff's claim against Defendant pursuant to the ACRA is barred by sovereign immunity.

**C. Punitive Damages**

Defendant argues that punitive damages are unavailable to Plaintiff because the plain language of Title VII prevents punitive damages where the defendant is a government, government agency, or political subdivision. (ECF No. 8, at 9). Again, Plaintiff flatly acknowledges that recovery of punitive damages from a government, government agency, or political subdivision are expressly barred under Title VII.

The Court agrees that Plaintiff cannot recover punitive damages. A plaintiff "may not recover punitives under Title VII if the defendant is a 'government, government agency or political subdivision.'" *Jackson v. Univ. of Ark. for Med. Scis.*, No. 4:08-cv-4234-WRW, 2009 WL 890518, at *2 (E.D. Ark. Mar. 31, 2009) (quoting 42 U.S.C. § 1981a(b)(1)). Thus, the Court finds that Plaintiff's request for punitive damages is barred by the plain language of Title VII.

## IV.  CONCLUSION

Accordingly, the Court finds that Defendant's Motion to Dismiss (ECF No. 7) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's ACRA claim and punitive damages request are hereby **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's Title VII retaliation claim will remain for further litigation.[2]

**IT IS SO ORDERED**, this 30th day of June, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[2] The parties' Joint Motion to Stay (ECF No. 13), Joint Motion to Withdraw Stay (ECF No. 15), and Joint Motion to Stay (ECF No. 16) are hereby **DENIED AS MOOT** because the Court has now ruled on Defendant's Motion to Dismiss.  However, the Court will entertain a Motion to Extend Trial Deadlines should the parties file one.